# SUPREME COURT.

WILLIAM TITUS, Respondent agt. PETER RELYEA, Appellant.

If any one principle more than another is well settled by the courts, it is that they cannot acquire jurisdiction by *laches*. And although a party may waive an irregularity by such means, courts cannot impart vitality to a void judgment by any action based upon laches, and an adjudication that there has been laches, does not of itself confer jurisdiction.

The 128th section of the Code, directs the summons to require the defendant to "serve a copy of his answer on the person whose name is subscribed to the summons *at a place within the state to be therein specified*, in which there is a post office," &c.

*Held*, that in cases of service by *publication*, the name of the *state* should somewhere appear; certainly it should appear in the summons, and perhaps in the complaint.

And where the summons as published, did not state the *time* and *place* of filing the complaint, but at the bottom of the summons, after the date and signature of the attorney, was this statement: "The complaint in said action, was filed in the clerk's office of the county of Montgomery, on the first day of October, 1857;" *Held* that a judgment entered upon such service was void for want of *jurisdiction*.

The 135th section of the Code, states that "in all cases where publication is made, the complaint must first be filed. and the summons as published must state the *time and place* of such filing." These are jurisdictional facts, and their omission in the summons as published, although contained in the notice following it, is fatal to the judgment.

*General Term, Fourth District.*

JAMES. ROSEKRANS *and* POTTER, *Justices.*

THIS is an appeal from an order of the special term, denying a motion to set aside a judgment. The motion was denied on the ground of laches alone. The action was commenced about the 1st of October, 1857, and the judgment entered on the 31st of December, 1857. The defendant was a non-resident of the state, living in the state of New-Jersey, and the service of the summons was claimed to have been made by publication under the Code.

The defendant in his affidavit states, that he resides in

Titus agt. Relyea.

Newark, New-Jersey; that he removed there in October, 1857, from Plainfield, in the same state; that he never received any summons or complaint, or copy of either, nor any paper whatever in the case; that the first he ever heard of the action, or that one had been commenced, was about the 1st of January, 1858, and then he merely heard by accident of the commencement of the suit, but did not learn any of the particulars thereof, and that he had no definite or authentic information in regard to it, until about the 10th of February, 1858; he then got a copy of the judgment roll, from which he learned the grounds of the action, and the proceedings had therein, and from which it appeared that demands against him, arising in New-Jersey, had been assigned to the plaintiff, who had commenced this suit thereon, and attached a house and lot of the defendant's, situated in Canajoharie, Montgomery county, in this state.

The notice of the motion to set aside the judgment, was served on the 27th of February, 1858, for a special term to be held on the 9th of March, 1858. The motion was based on the grounds of *want of jurisdiction* in the action, and *irregularity*. These grounds will sufficiently appear in the opinion of the court. The notice of the motion was given by an attorney residing in the city of New-York, who appeared for the purposes of the motion only. The papers in opposition show no contradiction of the facts in the moving papers. The proceedings upon which the judgment was based, the judgment roll, and the defendant's affidavit, are the papers upon which the motion was made.

S. T. FREEMAN, *for appellant.*
COOK & MORREL, *for respondent.*

By the court—POTTER, Justice. The defendant, by law in such a case as this, is limited in his application for relief to a *motion*, as the only remedy that exists for him to review the question of *jurisdiction* in a proceeding by which he may lose his estate. By the decision of the special term, he has been

Titus agt. Relyea.

restricted even in this right of review, and directed to make another application, and to submit to such terms, if he makes that application, as the court before whom it is made may there. impose; which terms may be to allow a judgment that may have been obtained without jurisdiction of his person or estate to remain as security to await a trial on the merits of the claim. And thus he may be cut off from examining the question of jurisdiction, not only by being compelled to submit to error against right, but by a reversal of the ordinary course of practice and having a judgment entered against him before trial. If the court had no jurisdiction in this case, such a decision is obviously wrong, because it is, and ever has been, the policy of this court, to allow the question of jurisdiction to be raised at any time. He ought to be allowed this privilege certainly, on the first he can get into court. Without jurisdiction, even in this court, the whole proceeding is *coram non judice.*

A party ought not by any compulsion in practice to be forced to admit jurisdiction. This motion, as has been stated, was . denied solely on the ground of laches, and although I have not been able myself to discover any, still as they have been adjudged by a member of the court, I would not undertake to review the decision upon that ground, except that the question of jurisdiction, *to which laches never apply*, arises in the case. If any one principle more than another is well settled by the courts, it is that they cannot acquire jurisdiction by laches. And although a party may waive an irregularity by such means, courts cannot impart vitality to a void judgment by any action based upon laches. And an adjudication that there has been laches, does not of itself confer jurisdiction. Let us then examine the question of jurisdiction. In this case, claim is made of jurisdiction over the personal property of the defendant, by a substitute provided by statute, for personal service. In all such cases we are bound to see that the statute has been strictly pursued. The persons and estates of individuals would be subject to alarming hazards if jurisdiction could be obtained over them by anything less than the fullest com-. pliance with all their requirements. In *Everton* agt. *Thomas,*

Titus agt. Relyea.

(5 *How. Pr. R.* 46,) PARKER, Justice, says, after citing various cases, " it will appear by these cases, how careful the courts have been to see that the statute is strictly complied with, in proceedings which subject property to seizure and sale without a personal service of process on the owner. The duty to protect against injustice is certainly none the less obligatory under the Code, which authorizes the recovery of judgment in so many cases on a mere publication of notice, substituted in the place of personal service."

The obvious design of the statute, which requires the commencement of an action to be by summons, is to give the defendant notice, not only of the commencement of the action, but when and most especially *where*, he may appear to defend it, and this whether served personally or by publication. A defendant residing in any state that has no Montgomery county in it, who should be sued in an action commenced by summons and complaint, sent to him by mail by a stranger, for a cause of action arising in his (defendant's) own state, which summons and complaint should communicate to him only the fact that the suit was commenced in the supreme court, Montgomery county, (without naming the state,) or though it should further state that the complaint would be filed with the clerk of that county, without naming the location of the clerk's office or the clerk's residence, would not be far advanced in the information necessary for his defence. The design of the statute in such case, would be quite ineffective to that end. If, as we are informed, there are fifteen states in the Union, each having a Montgomery county, he would rather find confusion and embarrassment from reading his papers, than the designed information which it was the object of the statute to communicate. And the time which is afforded by the statute to make his answer, might be quite too short for the purpose.

In my opinion, this is not a compliance with the strict demands of the statute, which requires the summons to state, " *where the complaint is, or will be, or has been filed.*" In cases of publication, the name of the state should somewhere appear ; it should be in the summons, and I think that it should be in

the complaint. That it should be in the summons, is entirely apparent to me, from the language of section 128 of the Code, which reads as follows: " The summons shall be subscribed by the plaintiff or his attorney, and directed to the defendant, and shall require him to answer the complaint, and serve a copy of his answer on the person whose name is subscribed to the summons *at a place within the state to be therein specified.*" Now, whether it is the *state* or the *place*, or *both*, that is required to be specified, the object beyond all doubt is *so to specify* that it may avail to inform and not to confuse the party. In this case, neither *state* or *place* are specified in the summons or complaint. Had the clerk's residence, or the town or city in which the office was located been given, it might have aided the defendant in his necessary study of geography, this it did not give. In case of a personal service in the same state, this might perhaps suffice.

Taking the several sections of the Code, from section 127 to section 135 together, I have no doubt that the proper form of the summons required to be published in case of a non-resident defendant, is, that it should state that the complaint *has been filed*, and that it should have this form where the order of publication is obtained. Otherwise, as in this case, the summons annexed to the complaint, will not be a copy of the summons published. Where the defendant is a non-resident of the state, no diligence to serve is required to be shown, (§ 135, *sub.* 3.) The statement of the fact of non-residence, is sufficient to obtain the order of publication, and this fact is usually as well known before as after issuing the summons.

In the case of publication, the Code (section 135) requires that " *the summons as published, must state the time and place of such filing.*" This I think was not done in this case. The summons as published, is dated the 13th of September, 1857, and is an exact copy in every particular of the summons annexed to the complaint, and of that contained in the judgment roll, which states that the complaint *will be* filed. Appended to the summons *as published*, is a notice stating as follows: " The complaint in said action, (meaning doubtless the action

referred to in the summons,) was filed in the clerk's office of the county of Montgomery, on the first day of October, 1857." This notice, it will be seen, could not have been appended earlier than the date of the occurrence to which it refers, to wit: the filing of the complaint, October first. It could not, therefore, have been a part of the summons issued on the 13th of September, nor of the one directed to be published by the county judge, on the 30th of September. This notice could not have been a part of the original summons, and is no part of the summons in the judgment roll. The party had no power to amend it. An amendment could only be made by an order of the court, and there is no evidence that this was obtained. The summons *itself*, therefore, as published, did not state *the time and place of such filing*. And although it may be said, that for all practical purposes the notice was just as good and just as communicative as the summons, yet this was a jurisdictional fact, and the omission to insert in the summons as published, that " the complaint *was filed*," and " the *time* and *place* of such filing," is fatal to the judgment. (*Randall* agt. *Washburne*, 14 *How. Pr. R.* 381, 382; *Hallett* agt. *Righters*, 13 *How. Pr. R.* 44, 45, 46, *and cases cited*.) *See Rawdon* agt. *Corbin*, (3 *How. Pr. R.* 416, 417,) *per* HAND, *Justice*, who says, " The order of publication should show that there *was* a summons and identify it. · Ordering a summons to be published in anticipation of one being made out, would not connect them on the record, except by reference to the claim, which is unsafe. It is *the* summons which is to be published."

There are several other objections to the validity of this record, not necessary to be discussed. I am satisfied that the doctrine of laches upon which the special term placed the decision of the motion, was error in this case, because there was no jurisdiction acquired, and that the order made should be reversed with costs, the order set aside, the judgment set aside, plaintiff to be permitted to amend and re-serve the summons.